UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

VARNARD JULIAN FARMER,     )
                                )
     Plaintiff,           )   Civil Action No. 5:04-57-JMH
                                )
v.                          )
                                )   **MEMORANDUM OPINION AND ORDER**
                                )
ASPLUNDH TREE EXPERT COMPANY,   )
                                )
     Defendant.           )

                         ** **     ** **     ** **     ** **     ** **

This matter is before the Court on Defendant Asplundh Tree Expert Company's motion for summary judgment [Record No. 24]. Plaintiff Varnard Julian Farmer filed a response to Defendant's motion [Record No. 25] to which Defendant replied [Record No. 26]. This matter is now ripe for review.

### FACTUAL BACKGROUND

Asplundh Tree Expert Company ("Asplundh") is a full-service utility contractor that, among other things, performs right-of-way clearing and maintenance, vegetation management, meter reading and installation, and utility pole maintenance under contract for utility companies in the Commonwealth of Kentucky. Under Asplundh's organizational scheme, the Commonwealth is divided into geographical areas, with a supervisor responsible for managing the work in an area. The various supervisors report to Dave Ellifritz ("Ellifritz"), the general manager for Kentucky, whose office is located in Nicholasville.

At Asplundh, work is generally performed by crews of two to three members, and each crew is headed by a crew foreman. The general foreman directs and assigns work to crews, and each general foreman may be responsible for anywhere from two to eight or ten crews. The general foremen report to the area supervisor.

Plaintiff began working at Asplundh in a temporary capacity in 1983 or 1984, replacing an injured crew member, and was laid off when the injured crew member returned to work. Asplundh rehired Plaintiff in 1989, but after Plaintiff failed to report to work in 1991, Plaintiff again was terminated. Plaintiff was rehired in January of 1992 and worked for several years in various labor positions including ground man, trimmer, and bucket operator. Plaintiff was promoted to the position of foreman, a position in which he worked for eight or nine years primarily in Richmond, Kentucky, under a contract with Kentucky Utilities.

In 2000, after Asplundh lost its contract with Kentucky Utilities, Plaintiff was promoted to assistant general foreman on a contract with Insight Communications. In that position, Plaintiff reported to general foreman Rob Earlywine ("Earlywine"). In early 2001, at 58 years old, Plaintiff was promoted to the position of general foreman. After the promotion, Plaintiff worked in Estill County and commuted to and from work. After the job in Estill County, Plaintiff worked on three different contract jobs between Asplundh and Jackson Energy Cooperative ("Jackson Energy"),

2

Fleming-Mason Rural Electric Cooperative ("Fleming-Mason Rural Electric"), and Big Sandy Rural Electric Cooperative Corporation ("Big Sandy Rural Electric").  During all three jobs, Plaintiff lived away from home during the week and went home on weekends. Ellifritz and Earlywine both testified that Plaintiff was unhappy with the jobs because of having to live away from home.

According to Ellifritz, Fleming-Mason Rural Electric and Big Sandy Rural Electric were displeased with Plaintiff's performance on the jobs.  Because the contracts with Jackson Energy, Fleming-Mason Rural Electric, and Big Sandy Rural Electric were not renewed after completion of the work, Ellifritz testified, Asplundh had difficulty finding work for Plaintiff.  Ellifritz testified that he offered Plaintiff a job as assistant general foreman for Bluegrass Rural Electric in Cynthiana, reporting to general foreman Bobby Condor ("Condor"), at the same pay and benefits that Plaintiff received as a general foreman.  According to Ellifritz, he told Plaintiff that the job would lead to another general foreman position.  Ellifritz contends, however, that Plaintiff declined the offer stating that he did not want to work under Condor but, instead, wanted Condor's job.  Earlywine likewise testified that Plaintiff stated that he would not work for someone who was not as smart as Plaintiff but would receive all credit for the work.

Ellifritz further contends that Plaintiff told him that Plaintiff would not work away from home and that he would not

3

uproot his family to accept a position away from home.  According to Ellifritz, therefore, he offered Plaintiff a crew foreman position in Danville, Kentucky, near Plaintiff's home.  Ellifritz testified that Plaintiff declined the offer and, instead, requested a layoff, which Ellifritz granted on March 29, 2002.  Additionally, Ellifritz testified that when a general foreman's position opened in Owensboro, Kentucky, Ellifritz did not offer the position to Plaintiff in light of Plaintiff's alleged refusal to relocate.

Plaintiff's version of the events is much different. Plaintiff contends that Ellifritz told Plaintiff he could fill the general foreman job with Bluegrass Rural Electric in Cynthiana after the Big Sandy Rural Electric job ended.  According to Plaintiff, while he was waiting for confirmation from Ellifritz regarding the job, Ellifritz held a meeting with Plaintiff in which Ellifritz informed Plaintiff that he was being laid off.  Plaintiff further testified that, at the meeting, when Plaintiff asked why he was being laid off, Ellifritz told Plaintiff that he was the "odd man out."  Plaintiff denies that Ellifritz ever offered Plaintiff a position under Condor and, thus, denies that he declined such an offer.  Plaintiff additionally denies telling Ellifritz that he would not relocate for a job.

In January of 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission.  During the course of the investigation surrounding the charge, Ellifritz

4

learned that Plaintiff denied ever having refused to relocate for a job. Thus, Ellifritz wrote to Plaintiff and offered him a vacant general foreman position under a contract with Kentucky Utilities in the Shelbyville/Louisville area. Plaintiff declined the offer stating that Asplundh had discriminated against him in the past, that his general foreman position had been terminated without cause, and that he did not want to relocate his family given the situation. Moreover, Plaintiff contends that other Asplundh employees, including general foremen, were not required to move to their respective coverage areas due to the nature of the work performed.

The evidence on which Plaintiff bases his claim of age discrimination arises from three alleged situations. First, Plaintiff relies on the testimony of his personal friend, Keith Austin, who came by the Nicholasville Asplundh office in December of 2001 to visit with Plaintiff. According to Austin, during that visit, Ellifritz gestured toward a group of Asplundh employees sitting together at a table at the back of the office and remarked, "There is the future of Asplundh Tree Company." (Austin Depo., Def.'s Memo. in Supp. of Summ. J., Ex. 6 at 44.) Austin testified that, in terms of age, he believed the employees to be in their twenties or thirties. According to Austin, Ellifritz also stated, "Farmer has got about one more year left in him." (*Id.* at 44-45.) Austin informed Plaintiff of the two alleged statements during the

summer of 2002, just a few months after Plaintiff had been laid off.

Finally, Plaintiff alleges that Earlywine had in the past referred to an unnamed Asplundh employee as "old and lazy." (*Id.*, Ex. 1 at 99.) Additionally, Plaintiff alleges that Asplundh wanted another of its employees, Buck P'Poole ("P'Poole"), a 62-year-old general foreman, to retire and that P'Poole told Plaintiff that Asplundh had in fact pressured P'Poole to do so. According to Plaintiff, around the same time, Ellifritz encouraged Plaintiff to go to Louisville to run a training crew to "help [Ellifritz] with Buck." (*Id.* at 102-03.) Plaintiff assumed that Ellifritz's statement meant that Ellifritz wanted Plaintiff to help encourage P'Poole to retire. Plaintiff further contends that, around the same time, Earlywine told Plaintiff that they wanted P'Poole to retire. P'Poole, on the other hand, testified that no one at Asplundh ever encouraged him to retire. Instead, P'Poole states that during a time when Asplundh had too many general foremen, P'Poole *offered* to retire if Asplundh would continue paying P'Poole's medical insurance premiums. According to P'Poole, Ellifritz denied P'Poole's request stating that P'Poole's experience was too valuable. P'Poole did not retire and continued to work for Asplundh following the incident.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that "[s]ummary

6

judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Only those "facts that might affect the outcome of the suit" will be considered material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the relevant "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant establishes a prima facie basis for summary judgment, the nonmovant must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest upon mere allegations or denials "but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256-57.

## DISCUSSION

The Age Discrimination in Employment Act ("ADEA") prohibits employers from discriminating against employees on the basis of

7

age.  29 U.S.C. § 623(a).  Under the ADEA, a plaintiff can establish age discrimination either with direct evidence or with indirect evidence through the burden shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547-48 (6th Cir. 2004).  Direct evidence is defined as "evidence that proves the existence of a fact without requiring any inferences."  *Id.* at 548.

If, in the absence of direct evidence, a plaintiff must rely on the *McDonnell Douglas* burden shifting analysis, the plaintiff must establish the following prima facie elements:  (1) that he was a member of a protected age class, (2) that he was discharged, (3) that he was qualified for the position held, and (4) that he was replaced by a younger worker.  *Id.* at 547.  However, in a "reduction in force" case, as here, the typical fourth prong is instead replaced with the requirement that the plaintiff produce "'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'"  *Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 767 (6th Cir. 2004)(quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)); *Rowan*, 360 F.3d at 547.[1]

---

[1] The parties seem to agree that this case is a reduction in force case.  Although the Court concurs, it is noteworthy that this is not a *typical* reduction in force case.  Specifically,

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to come forward with "'evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994)(quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If the defendant produces such evidence, "the burden shifts back to the plaintiffs, who must establish that the legitimate reasons offered by the defendant were just a pretext for decisions actually motivated by an unlawful bias against age." *Rowan*, 360 F.3d at 547.

The Court first finds that Plaintiff has not submitted any direct evidence of discrimination. For the Court to conclude that Asplundh discriminated against Plaintiff on the basis of age, the Court must draw inferences from the alleged fact scenarios on which

---

"[a] work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company." *Barnes*, 896 F.2d at 1465. On the other hand, "[a] person is *replaced* only when another employee is hired or reassigned to perform the plaintiff's duties." *Id.*

Due to the contractual nature of Asplundh's business enterprise, in which employees may work on certain jobs in short stints of time, this case does not fall squarely into the category of a reduction in force case. Nonetheless, when Plaintiff was terminated, Plaintiff's duties were not spread among other Asplundh employees, and Plaintiff was never "replaced" by another individual. Under these circumstances, the Court finds Plaintiff's situation to be more consistent with a reduction in force case than a replacement. As such, the parties were correct to analyze the case under the modified fourth prong.

9

Plaintiff bases his claim of age discrimination; the scenarios do not *directly* prove that Asplundh terminated Plaintiff's employment because of Plaintiff's age.   Thus, the Court must apply the *McDonnell Douglas* burden shifting approach to Plaintiff's tendered circumstantial evidence.

The Court first notes that Defendant does not appear to dispute that Plaintiff has satisfied the first three elements of the prima facie case:  Plaintiff was in the protected age class, Plaintiff was laid off, and Plaintiff was qualified for the position(s) held.  However, Defendant argues that Plaintiff has failed to produce evidence sufficient for the Court to find that Plaintiff's position was "singled out" for elimination because of Plaintiff's age.  The Court disagrees.

Plaintiff is correct that "[a]ge-related comments referring directly to the worker may support an inference of age discrimination." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993).  At the same time, where such comments are "isolated and ambiguous," they "'"are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination."'" *Id.* (quoting *Gagne v. N.W. Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989)(quoting *Chappell v. GTE Products Corp.*, 803 F.2d 261, 265-66 (6th Cir. 1986))).

The incidents alleged by Plaintiff in support of his age discrimination claim, when viewed separately, may be too isolated

10

or ambiguous to support an inference of age discrimination. However, when viewing the incidents collectively, as the Sixth Circuit has instructed this Court to do, *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998), the Court finds the incidents sufficiently probative of age discrimination to establish the fourth prong of the prima facie case. Additionally, although "a direct nexus between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value, the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant." *Id.* A reasonable juror could find that Ellifritz's alleged comments to Austin that certain younger employees were "the future of Asplundh" and that "Farmer has got about one more year left in him" were "age-related" comments;[2] the close proximity in time between the alleged comments and Plaintiff's layoff — just three months — enhances their probative value. In light of this evidence, viewed in connection with the P'Poole incident and the comment that an unnamed employee was "old and lazy," the Court finds that a reasonable juror could conclude that Defendant singled out Plaintiff for layoff because of

---

[2]     Defendant seems to argue that because Austin could not testify that the two comments that Ellifritz allegedly made to him were age-related, the Court should likewise so conclude. However, the relevant issue for purposes of summary judgment is not whether *Austin* believed the comments to be age-related but, instead, whether a reasonable juror could find the comments to be age-related.  The Court finds that a reasonable juror could find as such and, moreover, that such evidence is probative on the issue of whether Plaintiff was "singled out" because of age.

Plaintiff's age.[3]

Next, the Court finds that Defendant has produced legitimate, nondiscriminatory reasons for Plaintiff's layoff — that there was a lack of work and that Plaintiff turned down jobs for which he was qualified.  As a result, this matter turns on whether Plaintiff has produced evidence sufficient to raise a question of fact as to whether Defendant's proffered reasons were a pretext for age discrimination.  A plaintiff may show pretext in one of several ways.  First, a plaintiff may directly attack the credibility of the employer's proffered motivation by showing that the proffered reasons either had no basis in fact or did not actually motivate the discharge.  *Manzer*, 29 F.3d at 1084.  On the other hand, a plaintiff may indirectly attack the proffered reason "by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant."  *Id.*  Put another way, "the plaintiff [may] argue[] that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup."  *Id.*

---

[3]      In recognizing that this is a close case, the Court emphasizes that its role at this stage in the litigation is not to *weigh* the evidence or to assess witness credibility.  *See Anderson*, 477 U.S. at 249.  Rather, the issue before the Court is whether a reasonable juror *could conclude* from the evidence presented that Plaintiff was singled out because of age.  The Court agrees that a reasonable juror could reasonably conclude either way on this issue and, thus, a genuine issue of material fact remains.  *Id.* at 248.

Plaintiff's testimony, in the Court's view, raises a question of fact as to the legitimacy of Defendant's proffered reason for the layoff. Plaintiff submitted evidence that at least two jobs were available at the time Plaintiff was laid off — the general foreman position in Cynthiana and the job with Condor. However, contrary to Defendant's argument that Plaintiff turned down jobs that Defendant offered him, Plaintiff testified that he was never offered the position with Condor. Moreover, Plaintiff argues that Ellifritz assured Plaintiff that he would obtain the job in Cynthiana and that, despite such reassurances, Plaintiff was instead laid off. If believed, Plaintiff's testimony tends to show that there was not a complete lack of work at Asplundh and that Defendant failed to offer at least two available jobs to Plaintiff.

Additionally, Defendant argues that Plaintiff was never offered the position in Owensboro because Plaintiff previously told Ellifritz that Plaintiff would not relocate his family to accept a position. Peculiarly, despite Plaintiff's deposition testimony that Plaintiff never told Ellifritz that he would not relocate, Plaintiff's responsive brief altogether omits this allegation and argument. On the other hand, Plaintiff does argue in his responsive brief, consistent with his deposition testimony, that other Asplundh employees were not required to relocate away from their homes to accept foreman positions. In light of Plaintiff's collective proffered evidence, the Court finds that a reasonable

13

juror could reject Defendant's proffered reason for the layoff.

<strong>CONCLUSION</strong>

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion for summary judgment [Record No. 24] be, and the same hereby is, **DENIED**.

This the 19th day of May, 2005.



**Signed By:**

_**Joseph M. Hood**_

**United States District Judge**